**REVERSE and REMAND; and Opinion Filed August 22, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01318-CV**

**MASTERGUARD, L.P., Appellant**
**V.**
**ECO TECHNOLOGIES INTERNATIONAL LLC D/B/A YELLOWBLUE, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-09905**

## OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Lang-Miers

In this interlocutory appeal, appellant MasterGuard L.P. challenges the trial court's order sustaining the special appearance of appellee Eco Technologies International LLC d/b/a YellowBlue (Eco Technologies). Because we conclude that Eco Technologies is subject to specific jurisdiction in Texas, we reverse the trial court's order.

BRIEF AND EVIDENCE FILED UNDER SEAL

Before considering MasterGuard's issues, we must address one preliminary matter. In both this Court and the trial court, portions of the deposition of Mark Allen Schroder, Eco Technologies's President, as well as certain exhibits, were designated as confidential and filed under seal. The appellant's brief was filed under seal as well. At oral argument, this Court asked the parties to specifically designate the portions of the clerk's record which were filed under seal pursuant to the agreed protective order entered in the trial court on February 2, 2012.

The parties did so by letter. Because the protective order is not included in the record, we do not know the parties' stated reasons for wanting the information to be kept out of the public record.

This raises a significant dilemma on appeal because our opinions are a matter of public record, even when designated as memorandum opinions pursuant to Rule 47.4 of the Texas Rules of Appellate Procedure. *See* TEX. GOV'T CODE ANN. § 552.022(a)(12) (West 2012) ("final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases" are "public information"); TEX. R. CIV. P. 76a.1 ("No court order or opinion issued in the adjudication of a case may be sealed."). And facts that are necessary for us to discuss as part of our consideration of the issues presented by this appeal are included only in the portions of the record that are designated confidential. Schroder was the only witness deposed in connection with Eco Technologies's special appearance and some of his testimony is designated confidential. One of the exhibits that is designated as confidential is the only evidence of the terms of the relationship between Eco Technologies and defendant Billy Cox. The affidavits filed in connection with the special appearance are not designated as confidential but are also general and do not include specific facts necessary to our review. The parties' briefs not filed under seal are similarly general.

We have made every effort to preserve the confidentiality of the information the parties have designated as confidential. But we cannot decide this appeal without mention of some key jurisdictional facts. *See R.V.K. v. L.L.K.*, 103 S.W.3d 612, 614–15 (Tex. App.—San Antonio 2003, no pet.) (court "attempted to strike a fair balance" between the parties' interest in keeping sealed portion of record confidential with interest of court and public in fulfilling responsibilities as court of record); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 456 n.1 (Tex. App.—Austin 2004, pet. denied) (because technological and proprietary information at issue was filed under seal, court's references "are deliberately vague to preserve

–2–

confidentiality"). And some of those jurisdictional facts are presented only in material designated as confidential. Consequently, we have avoided references to as much information as possible that the parties designated as confidential and have made some references deliberately vague to avoid disclosure of that information.

BACKGROUND

MasterGuard, a Texas limited partnership, is a wholesaler of fire and safety products used in residences. MasterGuard contends that the success of its business depends on the experience and skill of the direct-sales dealers who sell MasterGuard's products through group and in-home presentations to consumers. Billy Cox, a defendant in the trial court but not a party to this appeal, was the President of MasterGuard. Disputes arose between Cox and MasterGuard. Cox and MasterGuard entered into a severance agreement that included confidentiality and noncompetition provisions in exchange for a monetary severance. After entering into the severance agreement, Cox formed Eco Technologies with other former employees of MasterGuard. Alleging that Cox's actions relating to Eco Technologies were in violation of Cox's severance agreement, among other complaints, MasterGuard sued Eco Technologies and Cox. Cox lives and works in Texas and has not filed a special appearance or otherwise challenged the trial court's jurisdiction over MasterGuard's claims against him individually.

In its operative petition, MasterGuard alleged causes of action for breach of contract, breach of fiduciary duty, tortious civil theft liability, fraud in the inducement, defamation, business disparagement, and trade secret misappropriation against Cox individually, and causes of action for tortious interference with contractual relationships, unfair competition, and civil conspiracy against both Eco Technologies and Cox. MasterGuard alleges that Eco Technologies interfered with several contracts, including the severance agreement between MasterGuard and Cox and MasterGuard's contracts with its independent directors and dealers. MasterGuard

contends that Eco Technologies induced Cox to breach the severance agreement by "among other things, directly and indirectly soliciting MasterGuard dealers to terminate their contractual relationships with MasterGuard . . . ." MasterGuard further contends that this conduct of Eco Technologies also interfered with MasterGuard's contractual relationships with its "independent directors and dealers."

MasterGuard's unfair competition and civil conspiracy claims against Eco Technologies are based on the same conduct, as well as the claimed disclosure of MasterGuard's trade secrets. MasterGuard alleges:

> Upon information and belief, Cox is both an owner of [Eco Technologies] and [an Eco Technologies] independent dealer. Cox, individually and through [Eco Technologies], has competed with the direct sales business of MasterGuard, and directly and indirectly recruited and attempted to recruit MasterGuard directors and dealers located in Texas and elsewhere to terminate their business and contractual relationships with MasterGuard and to employ their expertise and services in marketing through direct sales the products wholesaled by Cox's competing business. As a direct result of these efforts, dozens of MasterGuard dealers have terminated their relationships with MasterGuard and began representing [Eco Technologies] and [Eco Technologies's] independent sales force is comprised mostly of former MasterGuard dealers and sales personnel.

Eco Technologies filed a special appearance, verified by its President, Mark Schroder. In its special appearance, Eco Technologies included averments that it is a resident of Iowa and that it has not conducted business in Texas in connection with the allegations in MasterGuard's petition. Eco Technologies's operating agreement reveals that Eco Technologies is a limited liability company organized under Iowa law. The operating agreement provides that "the Company's business and the management of its affairs will be exercised and conducted solely by the Members and those persons designated by them" in accordance with the agreement. Cox is a member of Eco Technologies with less than a majority interest in the company.

–4–

In connection with Eco Technologies's special appearance, MasterGuard deposed Schroder as the corporate representative of Eco Technologies. Schroder testified that Eco Technologies was formed by Cox and others in Iowa. The principal and only office of Eco Technologies is in Iowa. Its officers and employees are in Iowa. Eco Technologies has independent dealers in Texas. Schroder explained Eco Technologies's business as follows:

> Q. Explain what exactly YellowBlue or Eco Technologies' business is.
>
> A. They – it is an LLC that was established to be a direct sales company.
>
> Q. What does it sell?
>
> A. Energy-saving products.
>
> Q. Can you elaborate?
>
> A. We sell products to end users, consumers, such as reflective insulation materials, solar-powered attic fans. I'd also like to add that we, YellowBlue/Eco Technologies, does not sell to the end user. I need to rephrase that. We sell to independent authorized dealers which in turn sell to end users, consumers.
>
> Q. So your independent dealers purchase the product from Eco Technologies, and then they in turn sell it to consumers. Is that how –
>
> A. That is correct.
>
> Q. – how it works? Okay. And do they collect a percentage of what they sell – [counsel's objection omitted] – [to] the independent dealers?
>
> A. We sell to the independent authorized dealer. They, in other words, purchase the product at wholesale from Eco Technologies International and in turn sell it to the end user/consumer, and they determine what price they sell it for. The percentage or how much they choose to keep is their business. It's not our business.

Eco Technologies's business success is determined by its sales to its independent dealers, not by the independent dealers' sales to consumers.

Schroder testified that Cox "is involved in some capacity" with one of the independent dealers in Texas. Eco Technologies has contracts with each of its independent dealers, according to Schroder's testimony. All of the products that are sold by independent dealers are shipped out of a warehouse in Iowa. Schroder testified that Eco Technologies sells only to its independent dealers, not to any consumers, and has never directly sold a product to an end user in Texas. Eco Technologies ships products to its independent dealers in Texas, but does not know where or to whom the dealers sell the products. Schroder could not testify as to specific instances, but stated that some of Eco Technologies's independent dealers "at one time perhaps may have been affiliated with MasterGuard." Eco Technologies recruits its independent dealers, and Schroder admitted that Cox recruits for Eco Technologies "through" a Texas dealer.

In support of its opposition to the special appearance, MasterGuard submitted the affidavit of Chris Roberts, its President. Roberts testified in support of the facts pleaded in MasterGuard's petition. MasterGuard also submitted its agreements with Cox, excerpts from Schroeder's deposition, and the Eco Technologies operating agreement, as well as other exhibits.

After a hearing,[1] the trial court granted Eco Technologies's special appearance and made findings of fact and conclusions of law in support of its order. This appeal followed.

ISSUES

In three issues, MasterGuard contends the trial court erred by sustaining Eco Technologies's special appearance. In its first issue, MasterGuard contends that Eco Technologies is subject to general jurisdiction in Texas because one of its members is a domiciliary of Texas. In its second issue, MasterGuard asserts that Eco Technologies is subject to general jurisdiction in Texas because it "employs numerous independent dealers in the State who conduct large scale marketing and sales of [Eco Technologies's] products in the State." In

---

[1] The appellate record does not include a reporter's record of this hearing.

its third issue, MasterGuard argues that Eco Technologies is subject to specific jurisdiction in Texas because MasterGuard's causes of action relate to purposeful tortious acts committed by Eco Technologies against MasterGuard in Texas. Because we sustain issue three, we do not need to address issues one and two. *See* TEX. R. APP. P. 47.1 (opinion must address issues "necessary to final disposition of the appeal").

APPLICABLE LAW

Texas courts may exercise personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The broad "doing business" language in Texas's long-arm statute allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). Personal jurisdiction is consistent with due process "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). In *Moki Mac*, the court explained that there are three issues to consider in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas. *See Moki Mac*, 221 S.W.3d at

575. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Id.* (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005)). Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the defendant "must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Id.* (quoting *Michiana*, 168 S.W. 3d at 785). A defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. *Id.*

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795–96 (Tex. 2002). Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id.* at 796. General jurisdiction is present when a defendant's contacts are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.* A general jurisdiction inquiry involves a more demanding minimum contacts analysis with a substantially higher threshold. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007).

STANDARD OF REVIEW

The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). But upon filing a special appearance, the nonresident defendant assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff. *Id.*

Whether a court has personal jurisdiction over a defendant is a question of law. *Id.* at 805–06. In resolving this question of law, however, a trial court must frequently resolve

questions of fact. *Id.* If a trial court enters an order granting a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *See BMC Software Belgium,* 83 S.W.3d at 794. The trial court's legal conclusions are reviewed de novo. *Id.* We explained the standard of review of the trial court's findings and conclusions in *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, writ denied):

> The trial court's findings of fact are binding upon the appellate court unless challenged on appeal. As the trier of fact, the trial judge may draw reasonable inferences from the evidence. We may not disregard his findings of fact on appeal if the record contains some evidence of probative value from which these inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. Although a party may not challenge a trial court's conclusions of law for factual sufficiency, we may review the conclusions the trial court draws from the facts to determine their correctness.

*Id.* (citations omitted); *see also Davey v. Shaw*, 225 S.W.3d 843, 849 (Tex. App.—Dallas 2007, no pet.) ("When a trial court's findings of fact are unchallenged on appeal, they occupy the same position and are entitled to the same weight as the verdict of a jury. . . . 'They are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding.'") (quoting *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)).

ANALYSIS

**Exercise of Personal Jurisdiction Consistent with Due Process**

We need address only the third issue, whether Eco Technologies is subject to specific jurisdiction in Texas because MasterGuard's causes of action relate to purposeful tortious acts committed by Eco Technologies against MasterGuard in Texas.

## I. Requirements for exercise of specific jurisdiction

### A. Applicable law

Specific jurisdiction exists "if the defendant's alleged liability arises out of or is related to the defendant's activities conducted within the forum." *Olympia Capital Assocs., L.P., v. Jackson*, 247 S.W.3d 399, 406 (Tex. App.—Dallas 2008, no pet). There must be a "substantial connection" between the nonresident's contacts with the forum and the operative facts of the litigation. *Id.* (citing *Moki Mac*, 221 S.W.3d at 585). A conspiracy claim alone is not enough to establish personal jurisdiction. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("Thus, we decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident of the forum state.").

### B. MasterGuard's allegations

In addition to its conspiracy claim, MasterGuard has asserted claims for tortious interference with contract and unfair competition against Eco Technologies. As explained above, MasterGuard contends that Eco Technologies interfered with the severance agreement between MasterGuard and Cox as well as MasterGuard's contracts with its independent dealers. In its petition, MasterGuard alleges that Cox,

> individually and through [Eco Technologies], has competed with the direct sales business of MasterGuard, and directly and indirectly recruited and attempted to recruit MasterGuard directors and dealers located in Texas and elsewhere to terminate their business and contractual relationships with MasterGuard and to employ their expertise and services in marketing through direct sales the products wholesaled by Cox's competing business.

Unlike the dealer agreements between Eco Technologies and its own independent dealers, the severance agreement between Cox and MasterGuard is a contract entered into in Texas between

–10–

Texas residents. The agreement expressly provides that is "governed by and construed in accordance with the laws of the State of Texas."

By pleading that Eco Technologies, through Cox's actions, interfered with Texas contracts and unfairly competed with MasterGuard's business in Texas, MasterGuard has pleaded "sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008) (nonresident does business in Texas if nonresident commits a tort in whole or in part in Texas). As a result, the burden shifted to Eco Technologies to "negate all bases of personal jurisdiction alleged" by MasterGuard. *See Kelly*, 301 S.W.3d at 658.

## II. Minimum contacts/purposeful availment

We next consider whether Eco Technologies negated MasterGuard's contention that Cox's activities may provide a basis for personal jurisdiction over Eco Technologies in Texas, and whether the exercise of jurisdiction over Eco Technologies is consistent with due process. In determining whether Eco Technologies established minimum contacts with Texas by purposefully availing itself of the privilege of conducting business within Texas, we consider the three issues identified in Moki Mac: i) whether the contacts were the defendant's, not those of a third party; ii) whether the defendant's contacts were purposeful; and iii) whether the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction. *See Moki Mac*, 221 S.W.3d at 575.

### A. Only defendant's contacts

In complaining about Eco Technologies's interference with its contracts, MasterGuard is primarily complaining about the actions of Cox, who lives and works in Texas and who has not challenged the trial court's exercise of personal jurisdiction over him. But in determining

whether Eco Technologies had minimum contacts with Texas, only Eco Technologies's forum state contacts matter, not the unilateral acts of a third party. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007) (per curiam). Contacts of an agent or corporate representative, however, may be sufficient to confer jurisdiction on the principal. *See Olympia Capital Assocs., L.P.,* 247 S.W.3d at 412–13. Consequently, the question is whether Cox's actions are attributable to Eco Technologies for purposes of the specific jurisdiction analysis. We conclude that they are.

### 1. Status as member

Eco Technologies was formed under Iowa law. And under Iowa law, Cox is not necessarily an agent of Eco Technologies solely because he is a member. *See* IOWA CODE § 489.301 (West, Westlaw through 2013 Legis. Sess.) ("A member is not an agent of a limited liability company solely by reason of being a member."). But the same statutory section also provides that "[a] person's status as a member does not prevent or restrict law other than this chapter from imposing liability on a limited liability company because of the person's conduct." *Id.*

The Iowa Court of Appeals recently discussed the application of section 489.301 in *Three Minnows, LLC v. Cream, LLC*, No. 12-0591, 2013 WL 1453246, at *1 n.1 (Iowa Ct. App. April 10, 2013). The court explained that under the Iowa Code, an LLC is presumed to be managed by its members unless the members agree that the company will be managed by a manager. *See id.* (citing IOWA CODE § 489.407). Under section 489.301, "[g]enerally, only managers can bind an LLC unless another party, such as a member, is given authorization to do so by a manager as a principal." *Id.* at *4. And in *Three Minnows*, where the LLC at issue was "manager-managed," a member did not have authority to bind the LLC to a contract. *Id.* The LLC's articles of organization expressly provided that "unless authorized to do so by the operating agreement, or

–12–

by a manager or managers of the Company, no member, agent or employee of the Company shall have any power to bind the Company in any way . . . ." *Id.*

Here, in contrast, Eco Technologies's operating agreement provides that "[t]he conduct of the Company's business and the management of its affairs will be exercised and conducted solely by the Members." And Cox is one of Eco Technologies's members. Although members can delegate to officers, "[i]n all events, the officers shall be subject to the direction and control of the Members."

### 2. Agency relationship

Under Iowa law, "the party asserting an agency relationship must prove its existence by a preponderance of the evidence." *Three Minnows, LLC*, 2013 WL 1453246, at *4 (citing *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 789 (Iowa 1985)). The *Three Minnows* court explained that agency "results from (1) manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to the former's control and, (2) consent by the latter to so act." *Id.* (quoting *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 38 (Iowa 1977)). An agency relationship can be established through the agent's actual or apparent authority to act on behalf of the principal. *Id.* (citing *Fed. Land Bank of Omaha v. Union Bank & Trust Co. of Ottumwa*, 290 N.W. 512, 514–15 (Iowa 1940)). Because the LLC's articles of organization in *Three Minnows* expressly provided that no member would have authority to bind the LLC, there was no express authority as a matter of law. *Id.* at *5. Here, in contrast, the operating agreement of Eco Technologies expressly provides for management by the members. In accordance with Iowa Code §489.407, in a "member-managed" limited liability company, "[t]he management and conduct of the company are vested in the members." IOWA CODE § 489.407.2.a (West, Westlaw through 2013 Reg. Leg. Sess.). As a member, Cox has

–13–

express authority to act on behalf of Eco Technologies.  *See Three Minnows, LLC*, 2013 WL 1453246, at *5.[2]

Eco Technologies argues that "Eco Technologies does not control Cox and Cox was not Eco Technologies' agent for purposes of the jurisdictional analysis," citing *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.).[3]  In *Coleman*, the question was whether Klöckner Industrial Installations, Inc. (Industrial), a Delaware corporation with its principal place of business in New York, was the agent of its parent corporation, Klöckner Industrie–Anlagen GmbH INA (INA), itself a wholly-owned subsidiary of a German holding company.  *See id.* at 583.  Industrial, through its president Klaus Brosig, had entered into contracts with Texas residents.  *Id.* at 584.  Brosig was not a Texas resident.  *See id.* at 588–89 (discussing Brosig's "visits" to Texas).  The court concluded Brosig's and Industrial's contacts could not be attributed to INA because there was insufficient evidence that INA "controlled" Industrial or Brosig.  *Id.* at 590.  There was no evidence that INA directed Brosig to travel to Texas or otherwise controlled the means and details of Brosig's work, and there was no evidence that Industrial had actual authority to negotiate or enter into contracts on INA's behalf.  *Id.*  Mutual benefit alone was not enough.  *Id.*

---

[2] MasterGuard also argues that Cox is a corporate representative of Eco Technologies, and asserts that "[w]hile not specifically addressing LLC's, Texas courts have long held that the contacts of a corporate representative undertaken on behalf of the entity will be imputed to the entity for jurisdictional purposes."  *See Nikolai v. Strate*, 922 S.W.2d 229, 240 (Tex. App.—Fort Worth 1996, writ denied) (contacts of attorney who was shareholder, director, and officer of professional corporation could be imputed to corporation for jurisdictional purposes); *Beecham v. Pippin*, 686 S.W.2d 356, 363 (Tex. App.—Austin 1985, no writ) (although "precise relationship" between individual and corporation not clear from record, "[i]t *is* clear from the record that [the individual] entered into the contract on behalf of [the corporation], and therefore the contacts of [the individual] relative to the contract will be imputed to [the corporation]," citing *Int'l Shoe*, 326 U.S. at 320); *see also Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 929 (Tex. App.—Austin 2010, no pet.) (corporate representative's acts on the corporation's behalf are considered acts of the corporation itself in determining whether the representative has minimum contacts with forum); *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (per curiam) (acts of corporate agent on behalf of principal ordinarily deemed to be corporation's acts).  As the Court noted in *International Shoe*, "[s]ince the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, . . . it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on its behalf by those who are authorized to act for it."  *Int'l Shoe*, 326 U.S. at 316.

[3] Eco Technologies also cites *Coleman* to support its argument that because Eco Technologies does not control "the day-to-day operations" of its independent dealers, the contacts of those dealers with Texas cannot be attributed to it.  This argument is made in response to MasterGuard's second issue contending that general jurisdiction exists because Eco Technologies has contracts with independent dealers in Texas.  Because this argument is relevant only to the exercise of general jurisdiction, we do not consider it further.

Here, in contrast to *Coleman*, Cox had actual authority to negotiate or enter into contracts on behalf of Eco Technologies. The operating agreement for Eco Technologies expressly provides that its business will be conducted solely by its members. In *Coleman*, it was the contacts of one entity and its president that the plaintiff sought to attribute to a different entity. *See id.* at 588. Here, it is a principal of the entity itself whose contacts are at issue. And in *Coleman*, the contacts were for the "mutual benefit" of the two entities. *See id.* at 590. Here, Cox is alleged to be recruiting dealers to contract with Eco Technologies. Schroeder testified that the "paperwork" for these contracts would be sent to him, and a contractual relationship would be created between Eco Technologies and the independent dealer. "Corporations, by their very nature, cannot function without human agents. As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).

We conclude that the facts presented here are more like those in *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 848 (Tex. App.—Houston [14th Dist.] 2010, no pet.), than those in *Coleman*. In *Horizon*, the defendants were an Alabama corporation and its principals. *Id.* at 844. The principals, Short and Forrest, resided in Mississippi and Alabama, but traveled to Texas in connection with a contract that was a subject of the lawsuit. *Id.* at 849. The trial court denied the special appearances of Short and Forrest as well as the special appearance of Horizon, the corporation of which they were principals. *Id.* at 844. The court of appeals rejected the argument that the actions of Short and Forrest were not attributable to Horizon for the purposes of evaluating Horizon's jurisdictional contacts with Texas. *Id.* at 848. The court noted that Short was president and general manager of Horizon, while Forrest was a project manager and director of operations for an unincorporated division of Horizon. *Id.* The court relied on *Holloway*, 898 S.W.2d at 795, for the proposition that the actions of a corporate agent

–15–

are deemed to be the corporation's acts, and on *Huynh v. Nguyen*, 180 S.W.3d 608, 620 (Tex. App.—Houston [14th Dist.] 2005, no pet.), for the proposition that the Texas contacts of agents or employees are attributable to their nonresident principals. *Id.* The court affirmed the denial of the special appearance. *Id.* at 851.

MasterGuard offered evidence showing that Cox had actual authority to conduct Eco Technologies's business under the express terms of Eco Technologies's operating agreement. The operating agreement, identified by Schroeder in his deposition, provides that only the members of Eco Technologies may manage and conduct its affairs. Schroeder confirmed that Cox has a membership share of the net profits and losses of Eco Technologies. Schroeder acknowledged that Cox has a voice in the direction of Eco Technologies. As a member of a member-managed limited liability company with express authority to conduct Eco Technologies's business, Cox was Eco Technologies's agent. See *Three Minnows, LLC*, 2013 WL 1453246, at \*1. And Cox conducted Eco Technologies's business when he recruited dealers to enter into contracts with Eco Technologies.

### 3. Cox's contacts attributable to Eco Technologies

Although the evidence showed that Eco Technologies's business was conducted by its members, the trial court did not make any findings regarding the residence of any member of Eco Technologies. Instead, the trial court found that "[n]o officer of Eco Technologies is a Texas resident." It is undisputed that Cox is not an officer of Eco Technologies. But there is no finding that the business of Eco Technologies is conducted by its officers rather than its members, nor is there evidence to support such a finding. Instead, as we have discussed, the evidence supports a finding that Cox is an agent of Eco Technologies: he is a member of Eco Technologies, a "member-mananged" limited liability company that he, with others, formed; he has express authority to act on Eco Technologies's behalf under its operating agreement; he or an

–16–

entity with which he is connected recruits dealers to enter into contractual relationships with Eco Technologies from which Eco Technologies expects to profit; Eco Technologies has entered into contracts with the recruited dealers, evidencing both its consent that Cox act on its behalf and Cox's consent to do so; and Eco Technologies, not Cox, controls the structure and terms of the contractual relationships with the recruited dealers. We conclude that Cox's contacts with Texas are attributable to Eco Technologies for purposes of the specific jurisdiction analysis.

## B. Contacts were purposeful

The evidence offered through Schroder's testimony and Eco Technologies's operating agreement supported a finding that Eco Technologies's contacts were purposeful. MasterGuard's claims arise out of Cox's recruitment of dealers for Eco Technologies. Schroder admitted that Eco Technologies's own "in-force dealer network" recruits its independent dealers. He testified that Eco Technologies has independent dealers in Texas. He testified that Eco Technologies was created in May, 2011, five months after Cox and MasterGuard entered into the severance agreement, and that Eco Technologies had no independent dealers at the time it was formed. Schroeder admitted that Cox lives in Texas and is "involved in some capacity" with one of Eco Technologies's first independent dealers. Schroder also admitted that Cox, "through" that dealer, recruited independent dealers for Eco Technologies.

Additionally, Schroder testified that he may not necessarily discuss the recruitment of a particular independent dealer with Cox or the recruiting dealer in advance, and "on occasion," may not become aware of the new dealer until "the paperwork shows up." But Eco Technologies, not the recruiting dealer, is the party to the contract with the new dealer. Eco Technologies, not the recruiting dealer, controls the relationship with the new dealer. Eco Technologies emphasizes in its brief that it has structured these transactions to be governed by Iowa law. And Eco Technologies sets the terms under which it does business with that dealer,

–17–

requiring that all sales from Eco Technologies to its independent dealers take place in Iowa. Although contractual disputes between Eco Technologies and its Texas dealers would be settled pursuant to Iowa law, the recruitment of these dealers was undertaken in Texas and is the basis for MasterGuard's tortious interference and unfair competition claims.

In the trial court's findings of fact, the trial court stated that "Eco Technologies does not send its officers, employees or agents into the State of Texas to conduct business," that "Eco Technologies does not send agents to Texas to conduct business of behalf of Eco Technologies," and that "Eco Technologies did not and has not conducted business in the State of Texas in connection with the allegations in the Petition." The trial court also made a conclusion of law that "Eco Technologies has not committed any tort, in whole or in part, in the State of Texas." The trial court's very general findings were in part supported by Schroder's verification of Eco Technologies's special appearance, which was comprised of similarly general statements. Based on Schroder's more specific testimony about Eco Technologies's actual business activities, however, Eco Technologies did not have to "send" Cox to Texas to conduct business, for example, because he was already there. And although its contracts with independent dealers were governed by Iowa law, it is the creation of those contractual relationships by Cox in Texas in alleged violation of his severance agreement that is the subject of MasterGuard's claims, not disputes arising out of the contracts themselves. We conclude that Eco Technologies's activities through Cox in Texas were "purposeful rather than random, fortuitous, or attenuated." *See Moki Mac*, 221 S.W.3d at 575.

### C. Benefit, advantage, or profit

We also conclude that Eco Technologies sought a "benefit, advantage or profit by availing itself of the jurisdiction." *See Moki Mac*, 221 S.W.3d at 575. MasterGuard's allegations are that Eco Technologies, through Cox, sought to establish relationships with

independent dealers who were or had been affiliated with Master Guard. As Schroeder testified, Eco Technologies's only sales are to its independent dealers, not to consumers. Establishing contractual relationships with independent dealers in Texas would result in increased sales by Eco Technologies, and a benefit, advantage, or profit to Eco Technologies. *See id.*

### D. Conclusion as to minimum contacts

Considering the evidence in the light most favorable to the judgment and indulging every reasonable inference that would support the trial court's findings, we conclude that the evidence is legally and factually insufficient to support the trial court's findings that Eco Technologies has no agent in Texas and that "Eco Technologies did not and has not conducted business in the State of Texas in connection with the allegations in the Petition." *See Hotel Partners*, 847 S.W.2d at 632 (explaining standard of review). The findings are "so contrary to the overwhelming weight of evidence as to be manifestly wrong." *Id.* Eco Technologies did not negate the bases for the exercise of personal jurisdiction by the trial court. *See Kelly*, 301 S.W.3d at 658. The trial court erred by concluding that Eco Technologies did not have sufficient contacts with the state of Texas to subject it to the personal jurisdiction of Texas's courts.

## III. Fair play and substantial justice

In addition to minimum contacts, the exercise of personal jurisdiction must satisfy traditional notions of fair play and substantial justice. *Moki Mac*, 221 S.W.3d at 574 (citing *Int'l Shoe*, 326 U.S. at 316). Determining this issue involves consideration of the burden on the nonresident defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in furthering substantive social policies. *Davey*, 225 S.W.3d at 851 (citing *Asahi Metal Indus. Co. v. Superior Court of CA, Solano Cty.*, 480 U.S. 102, 113 (1987)). However, when a

nonresident has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction over that defendant does not comport with traditional notions of fair play and substantial justice. *Id.* at 851–52.

Other than Eco Technologies's general statement that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice, nothing in the record indicates litigation in Texas would be a hardship. Cox, the member of Eco Technologies with knowledge of facts relevant to this lawsuit, lives and works in Texas, is already a defendant in the lawsuit, and has not challenged the trial court's jurisdiction over him. *See Davey*, 225 S.W.3d at 708 (discussing similar circumstances). Schroder testified that Cox "would have the most information" about how certain Texas entities became authorized dealers for Eco Technologies. As discussed, the recruitment of independent dealers on Eco Technologies's behalf was undertaken by Cox in Texas. Texas courts also have an interest in this litigation because of the alleged torts committed against Texas residents. *See id.* MasterGuard is a Texas limited partnership with its principal place of business in Dallas County. Cox was employed by MasterGuard in Texas, and the agreement Cox is alleged to have breached is governed by Texas law. The actions constituting Cox's alleged breach of contract and Eco Technologies's alleged torts occurred in Texas. Because there is a "substantial connection" between Eco Technologies's contacts with Texas and the operative facts of the litigation, *see Moki Mac*, 221 S.W.3d at 585, it would not offend any interest of the interstate judicial system to require Eco Technologies to answer claims in Texas. Given that MasterGuard and Texas have legitimate interests in litigating this case in Texas and the burden on Eco Technologies is minor, we conclude that the exercise of jurisdiction over Eco Technologies in Texas does not offend traditional notions of fair play and substantial justice. *See RSR Corp. v. Siegmund*, 309 S.W.3d 686, 708–09 (Tex. App.—Dallas 2010, no pet.) (citing *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 231).

CONCLUSION

We conclude that the Texas long-arm statute permits the exercise of jurisdiction over Eco Technologies and the assertion of jurisdiction is consistent with notions of fair play and substantial justice. The trial court erred in granting Eco Technologies's special appearance. Accordingly, we sustain MasterGuard's third issue and reverse the trial court's order granting the special appearance of Eco Technologies. We remand the cause for further proceedings.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE


121318F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MASTERGUARD, L.P., Appellant

No. 05-12-01318-CV     V.

ECO TECHNOLOGIES
INTERNATIONAL LLC D/B/A
YELLOWBLUE, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-09905.
Opinion delivered by Justice Lang-Miers,
Justices Moseley and Bridges participating.

In accordance with this Court's opinion of this date, the trial court's order granting the plea to the jurisdiction of appellee Eco Technologies International LLC d/b/a YellowBlue is **REVERSED**. We **REMAND** the cause to the trial court for further proceedings.

It is **ORDERED** that appellant MasterGuard, L.P. recover its costs of this appeal from appellee Eco Technologies International LLC d/b/a YellowBlue.

Judgment entered this 22nd day of August, 2013.


/Elizabeth Lang-Miers/
—————————————————
ELIZABETH LANG-MIERS
JUSTICE