**AFFIRM; and Opinion Filed June 30, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00412-CV

**360-IRVINE, LLC, 360-IRVINE MEMBER, LLC, AND 360-RESIDENTIAL, LLC.,
Appellants
V.
TIN STAR DEVELOPMENT, LLC, AND TIN STAR-IRVINE MEMBER, LLC, Appellees**

On Appeal from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-1-14255

# MEMORANDUM OPINION

Before Justices Bridges, Myers, and Brown
Opinion by Justice Brown

In this interlocutory appeal, 360-Irvine, LLC, 360-Irvine Member, LLC, and 360-Residential, LLC appeal the trial court's denial of their special appearance. In two issues, appellants assert the trial court lacked personal jurisdiction over them because (1) they did not establish minimum contacts with Texas, and (2) they did not consent to jurisdiction in Texas. For the following reasons, we affirm the trial court's order.

Background

In 2012, Tin Star Development, a limited liability company, whose principal place of business is in Dallas, Texas entered into a purchase and sale agreement for real property located in Irvine, California. Tin Star sought to develop the property into an apartment complex and had

begun discussions with various vendors and other professionals concerning the project. Tin Star also sought investors to help it pursue and develop the project.

360 Residential, a Georgia limited liability company, expressed interest. Tin Star was concerned 360 Residential might use its confidential information to try to "go around" it and "cut it out" of the project. Therefore, to enable 360 Residential to evaluate the opportunity, yet still protect Tin Star's interests in the project, Tin Star and 360 Residential entered into a "Confidentiality, Nonintervention, and Non-Circumvention Agreement." That agreement contained a forum selection clause selecting Texas as the proper venue for any actions arising out of or related to that agreement and also a choice of law provision designating Texas law as controlling.

360 Residential and Tin Star subsequently agreed to form 360 Irvine, a Delaware limited liability company (the Company), to pursue the project. They each formed new entities to act as the members of the Company, 360 Irvine Member, and Tin Star - Irvine Member. The 360 Irvine Limited Liability Company Agreement (the LLC Agreement) provided that the Company would be managed and operated by an "Administrator" and a "Manager." The Tin Star member was designated as the Administrator, and the 360 Member was designated the Manager. The Tin Star member, as Administrator, was given the "non-exclusive right, power, and authority, and duty to manage the day-to-day business and affairs of the Company." The 360 member, as Manager, was given the "full right, power, authority and discretion to conduct the affairs of the company." The LLC Agreement further provided the Manager could remove the Administrator, at any time, with or without cause.

The LLC Agreement did not contain a forum selection clause. Although the Company was created to pursue the California project, it also contemplated the Company acquiring real estate investments in Texas. Specifically, the LLC Agreement contained an exclusivity clause

that required Tin Star and any of its affiliates to offer any "investment opportunity" to the Company. It defined "investment opportunity" as "any development or purchase of a property intended to be a multifamily property in the states of Arizona, California, or Texas."

After entering into the Agreement, Tin Star Development assigned the purchase and sale agreement for the Irvine property to the Company. The Tin Star member then managed the day-to-day affairs of the Company from Dallas, Texas. Appellants expressly authorized the Tin Star member to do so and also to specifically establish a Dallas office for the Company.

According to Tin Star Development and the Tin Star member (referred to collectively as Tin Star), appellants then failed to fund and develop the project, interfered with the Tin Star member's duties and responsibilities under the LLC Agreement, and then ultimately removed the Tin Star member as Administrator of the Company. Tin Star filed suit against appellants and two individuals, Jeff Warshaw and Clark Butler, who it alleged controlled each of the 360 entities. Tin Star alleged appellants fraudulently induced it to enter into the LLC Agreement, fraudulently obtained the purchase and sale agreement, and breached both the LLC Agreement and the non-disclosure non-circumvention agreement.

Appellants filed a special appearance contesting the trial court's personal jurisdiction over them. *See* TEX. R. CIV. P. 120a. Following a hearing, the trial court denied the special appearance.[1] The trial court did not make findings of fact and conclusions of law. Appellants bring this interlocutory appeal. In their first issue, appellants assert the trial court erred in

---

[1] At the hearing on the special appearance, the trial court noted that Tin Star had filed several motions to compel discovery and a motion to continue the special appearance hearing. The trial court decided to proceed with the hearing and consider the evidence Tin Star had at that time. The trial court indicated that if Tin Star had failed to establish jurisdiction, but also found further discovery and/or its rulings on Tin Star's motions to compel might permit it to show jurisdiction, it would adjourn the hearing and determine the discovery disputes. After the hearing, the trial court concluded that Tin Star had met its burden with respect to the entity defendants, but not the individual defendants. As a consequence, it denied the entity defendants' special appearances, but continued the hearing with respect to the individual defendants pending further discovery. Under these circumstances, it is not clear that even if we were to conclude Tin Star failed to show appellants had established minimum contacts the appropriate remedy would be dismissal rather than a remand to the trial court to determine whether to allow Tin Star further discovery and/or to obtain rulings on its discovery disputes. *See, e.g., Morris Indust., Inc. v. Trident Steel Corp.*, No. 01-09-01094-CV, 2010 WL 4484351, at *5(Tex. App.—Houston [1st Dist.] 2010, no pet.).

denying their special appearance because they lacked sufficient minimum contacts with Texas to support either specific or general jurisdiction.[2]

Applicable Law

1. Minimum Contacts

Personal jurisdiction over a nonresident defendant satisfies constitutional due-process guarantees when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985); *Kelly v. Gen. Interior Const., Inc.,* 301 S.W.3d 653, 658 (Tex. 2010). Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Kelly,* 301 S.W.3d at 657–58; *Dukatt v. Dukatt*, 355 S.W.3d 231, 236 (Tex. App.—Dallas 2011, pet. denied). A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex. 2009). Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum state. *Id.* at 338. In contrast, general jurisdiction is established if the defendant has had continuous and systematic contacts with the forum, regardless of whether the defendant's alleged liability arises from those contacts. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex. 2007).

2. Burdens on Special Appearance

The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Id*. at 574; *Am. Type Culture Collection v.*

---

[2] Tin Star's pleadings asserted the 360 entities' separate status should be ignored under various theories, including alter ego, sham to perpetuate a fraud, and inadequate capitalization. In this appeal, appellants have not attempted to distinguish the contacts between each entity. We will address their appellate issues as presented.

*Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). The long-arm statute permits the assertion of jurisdiction if a nonresident "does business" in Texas. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). If the plaintiff's allegations are sufficient to bring the nonresident defendants within the provisions of the long-arm statute, the nonresident defendant then has the burden to negate all bases of jurisdiction alleged. *Moki Mac*, 221 S.W.3d at 574. The defendant can meet this burden by presenting evidence that it lacks minimum contacts with Texas. *Kelly*, 301 S.W.3d at 659. If the defendant presents such evidence, the burden shifts back to the plaintiff to show jurisdiction by presenting evidence supporting its jurisdictional allegations. *Kelly*, 301 S.W.3d at 659.

### 3. Appellate Review

Whether a court has personal jurisdiction over a nonresident defendant is a question of law which we review de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Wikert v. Year One, Inc.*, 320 S.W.3d 522, 524 (Tex. App.—Dallas 2010, no pet.). However, resolution of the legal question often requires the trial court to first resolve factual issues. *See BMC Software Belg.* 83 S.W.3d at 794; *Wikert*, 320 S.W.3d at 524. When the trial court does not issue findings of fact and conclusions of law to support its ruling on a special appearance, we will imply the trial court found all facts necessary to support the judgment that are supported by the evidence. *BMC Software*, 83 S.W.3d at 795. The trial court's implied findings may be challenged for legal and factual sufficiency on appeal. *BMC Software*, 83 S.W.3d at 795; *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 699 (Tex. App.—Dallas 2010, no pet.). This court must affirm the trial court's ruling on any legal theory that finds support in the record. *Dukatt*, 355 S.W.3d at 237.

Application

In its petition, Tin Star alleged the Texas court had both general and specific jurisdiction over appellants pursuant to the Texas long-arm statute. Specifically, Tin Star alleged appellants did business in Texas, maintained an office in Texas, entered into contracts with Texas residents that were performable in whole or in part in Texas, and committed torts, in whole or in part, in Texas, and recruited Texas residents for employment inside or outside this State. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2015). At the hearing on the plea to the jurisdiction, to meet their burden to negate Tin Star's jurisdictional allegations and show they lacked contacts with Texas, appellants relied on the affidavit of Jeff Warshaw.

In his affidavit, Warshaw testified to both his own lack of contacts with Texas as well as each appellant entities' lack of contacts with Texas. To show he was competent to testify to each entities' contacts, Warshaw states that he was "a" member of 360 Residential and showed the relationship between 360 Residential and the other 360 entities.[3] Warshaw then stated that to the "best of [his] knowledge" each entity had never conducted business in Texas, had never had offices or maintained a place of business in Texas, had never had any employees in Texas, and had never had a bank account, office, address, directory listing, or telephone number in Texas. He further stated that "[t]o the best of [his] knowledge," no member, agent, or representative of each entity had conducted business in Texas on its behalf. In contrast to his statements about the entities' contacts, Warshaw's statements showing he did not personally do business in Texas were positive and unqualified. Tin Star objected to the affidavit because it lacked foundation, was fraudulently made, and it had no opportunity to cross-examine Warshaw. The trial court overruled the objections, but noted it would give no weight to any incompetent or conclusory statements.

---

[3] Of note, Warshaw repeatedly refers to the Company, which is an LLC, as a "joint venture."

The only live witness at the hearing was Larry White, the manager of the Tin Star member and co-manager of Tin Star Development. To show appellants' contacts with Texas, White testified that the Tin Star member was the designated Administrator of the Company and ran almost all of the day-to-day business affairs of the Company from Dallas, Texas. He testified Warshaw and Clark Butler specifically authorized him to do so and also authorized him to establish a Dallas office for both the Company and 360 Residential. With Warshaw and Butler's approval, White represented to parties and vendors throughout the United States that appellants had a Dallas office and he was conducting appellants' business from the Dallas office. White also testified that at the request of Warshaw and Butler, he had business cards and letterhead made showing he worked for 360 Residential at the Dallas office. White, however, acknowledged that none of the terms of the LLC agreement required Tin Star to perform its duties in Texas, and some of its duties had to be performed in California. After hearing the evidence, the trial court denied appellants' special appearance.

Because the trial court did not make findings of fact, we will imply the trial court found all facts necessary to support its ruling and we affirm on any theory that finds support in the record. *Dukatt*, 355 S.W.3d at 237. On appeal, appellants largely fail to address the preliminary issue of whether they met their burden to show they lacked contacts with Texas, instead citing us only generally to Warshaw's affidavit. The first question we address is whether Warshaw's affidavit showed appellants lacked minimum contacts with Texas. An affidavit not based on personal knowledge is not competent evidence. *Neel v. Tenet HealthSystem Hosp. Dallas, Inc.*, 378 S.W.3d 597, 608 (Tex. App.—Dallas 2012, pet. denied); *Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 542–43 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). An affidavit must therefore disclose the basis on which the affiant has personal knowledge of the facts to which he attests. *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988).

Additionally, an affidavit must positively and unqualifiedly represent the "facts" stated therein to be true. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Statements that are equivocal or are based on the affiant's "best knowledge" and "belief" do not indicate the affiant has personal knowledge. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *In re Dobbins*, No. 05-07-01094-CV, 2007 WL 2501365, at *1 (Tex. App.—Dallas Sep. 6, 2007, orig. proceeding).

We conclude Warshaw's affidavit did not constitute competent evidence of appellants' lack of contacts with Texas for two related reasons. First, Warshaw's statement that he was "a" member of Residential 360 failed to establish how his status as a member of an LLC would provide him with personal knowledge of the extent of the LLC's contacts with Texas such that he knew the LLC or its related entities had no such contacts. For example, Warshaw did not claim he was a manager or officer of any of the 360 entities or state what his duties or responsibilities were with respect to any of the entities during the applicable time period. Warshaw's affidavit thus lacked any underlying information to show he had personal knowledge of the critical facts stated in his affidavit, i.e., the absence of appellants' contacts with Texas. *See Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 377 (Tex. App.—Dallas 2011, no pet.) (affiant failed to demonstrate personal knowledge when he failed to describe job duties during the relevant time period).

Second, Warshaw effectively disclaimed personal knowledge with respect to the entities' lack of contacts by expressly qualifying his statements about the entities' contacts, but not his own, as being made to the best of his knowledge. By doing so, while at the same time failing to claim he knew the extent of the entities' contacts, Warshaw did not represent positively and unqualifiedly that the entities' lacked such contacts with Texas. Absent evidence that appellants lacked minimum contacts with Texas, we cannot conclude the trial court erred in denying their

special appearance. *See Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 441 & n.1 (Tex. App.—Dallas 2004, pet. dism'd) (affirming trial court without considering whether plaintiff presented evidence of minimum contacts because defendant failed to present evidence it lacked contacts with Texas).

But even if Warshaw's affidavit sufficed to show appellants lacked contacts with Texas, we would still conclude appellants have failed to show error. According to appellants, the trial court found they purposefully availed themselves of the benefits and privileges of doing business in Texas by erroneously imputing to them Tin Star's contacts with Texas under an agency theory. [4]

It is well-settled that when determining a nonresident's contacts with a forum, we consider only the contacts that the defendant itself creates with the forum State. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). "[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). A defendant's relationship with a plaintiff or third party, "standing alone," is therefore an insufficient basis for jurisdiction. *Walden*, 134 S. Ct. at 1123. However, a defendant's contacts with the forum may be intertwined with his transactions or interactions with the plaintiff or other parties. *Id.* at 1123. Further, the contacts of an agent are properly imputed to its principal. *MasterGuard L.P. v. Eco Technologies Intern, LLC*, 441 S.W.3d 367, 376 (Tex. App.—Dallas 2013, no pet.); *Olympia Capital Associates, L.P. v. Jackson*, 247 S.W.3d 399, 412−13 (Tex. App.—Dallas 2008, no pet.).

---

[4] Also, relying on this Court's opinion in *Olympia Capital Assoc., L.P. v. Jackson*, 247 S.W.3d 399, 412 (Tex. App.—Dallas 2008, no pet.), appellants assert the trial court could not impute Tin Star's contacts to them under the single business enterprise theory. Tin Star, however, has never claimed its acts can be imputed to appellants under a "single business enterprise" theory. We nevertheless note that the single business enterprise theory is a theory of veil piercing that allows, in some jurisdictions, the obligations of one entity be imposed on *another* legal entity. *See id.* Here, the two applicable entities did not merely engage in a single business *enterprise*, but formed an LLC, which is itself a single business *entity*. Thus, liability issues are properly analyzed under the rules applicable to such an entity.

According to appellants, the trial court could not consider Tin Star's contacts with Texas under an agency theory because Tin Star's acts, even if taken on behalf of appellants, were not created by appellants own conduct. In other words, they assert an agent's contacts cannot be imputed to the principal when the agent is also the plaintiff.

We cannot agree. First, as noted, a constitutional minimum contacts inquiry must turn on the defendant's conduct. It follows that the identity of the claimant is not the proper focus in analyzing a defendant's contacts with the forum. Further, appellants' argument requires us to ignore their status as legal entities and the manner in which an entity must conduct its business activities. Specifically, an LLC, like a corporation, can only act through its agents and authorized representatives. *See MasterGuard L.P.*, 441 S.W.3d at 379. An LLC specifically acts through those authorized by its LLC Agreement to conduct its business activities. *See MasterGuard L.P.*, 441 S.W.3d at 379. The actions of an entities' agent are deemed the acts of the entity. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995); *MasterGuard*, 441 S.W.3d at 379.

Here, it was the LLC Agreement, combined with appellants' own actions, not Tin Star's unilateral activity, that authorized Tin Star to open a Dallas office and to conduct appellants' business from Texas. We cannot conclude the trial court erred in considering actions, which appellants' themselves authorized and were taken on their behalf, in considering whether appellants established minimum contacts with Texas.

Appellants next assert the trial court erred in imputing any of Tin Star activities to them because Tin Star was not their agent. In making this argument, appellants fail to analyze this issue under the proper standard of review. Specifically, appellants do not directly challenge the trial court's implied finding of agency for legal and factual sufficiency. They do, however, assert Tin Star was not their agent because: (1) the LLC Agreement explicitly stated that Tin Star was

not the agent of the Company and (2) appellants did not have the right to control the "means and details" of how Tin Star conducted activities on their behalf. Liberally construing appellants' brief, we construe its arguments as raising a "no evidence" challenge to the trial court's implied finding of agency.

First, appellants assert Tin Star was not its agent because the LLC Agreement "explicitly stipulates" that Tin Star was not the agent of the Company. Appellants thus appear to assert the LLC Agreement conclusively negated a finding of agency. See *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (no evidence challenge will be sustained if evidence conclusively negates the opposite of a vital fact). They rely on Section 4.1(g) of the LLC Agreement. Although Section 4.1(g) states the Administrator "shall not be an agent of the Company," it did so in reference to the Administrator's authority to bind the Company and to hire service providers.

In any event, Tin Star is not asserting the LLC agreement by itself authorized it to establish appellants' contacts with Texas. Rather, that agreement expressly authorized Tin Star to manage the day-to-day business of the Company and appellants (including the Manager of the Company) then authorized Tin Star to do so from Texas. The LLC Agreement expressly allowed the Manager to designate officers and agents to perform such powers and duties assigned or delegated. We do not read Section 4.1(g) as prohibiting appellants from expressly authorizing Tin Star to act as their agent.

Next, appellants assert there is no evidence to show agency because Tin Star failed to present evidence that appellants had the right to control the "means and details" of how Tin Star was to perform its obligations under the LLC agreement. In asserting Tin Star was required to present evidence of "right to control," appellants rely on cases contrasting an agent from an independent contractor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex.

–11–

2002) (*citing Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990)); *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Appellants' argument ignores the nature of the relationship between the parties. Specifically, appellants do not suggest Tin Star was merely a third party "independent contractor" of the Company. *Indus. Indem. Exch. v. Southard*, 138 Tex. 531, 160 S.W.2d 905, 907 (1942) (an independent contractor is one who, in pursuit of an "independent business," undertakes specific work for another using his own means and methods without submitting to the control of the other person as to the details of the work). Instead, Tin Star was the designated Administrator of the Company, and was granted authority to manage the operations of the Company by the very document that governed the Company's internal affairs. As noted, Tin Star presented evidence that appellants, including the Manager of the LLC, then expressly authorized it to conduct the Company's day-to-day affairs from Texas and to establish the very contacts upon which it relies on to establish jurisdiction. We conclude Tin Star, in conducting the business of the LLC, was the agent of the LLC. *See Masterguard,* 441 S.W.3d at 379.

We now turn to whether Tin Star showed appellants, through all of their authorized agents and representatives, established minimum contacts with Texas by purposefully availing themselves of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). According to appellants, Tin Star's proof was insufficient to support either specific or general jurisdiction because Tin Star presented evidence only of a single contract with an entity located in Texas. We agree that a "single contract" with a Texas resident does not alone "automatically" establish jurisdiction. *See Michiana Easy Livin' Country*, 168 S.W.3d 777, 786 (Tex. 2005); *Burger King Corp.*, 471 U.S. at 478. The Texas Supreme Court has, however, distinguished single contracts with a resident of a state from contracts that create a "continuing

relationship" with the forum state. *See Retamco Operating*, 278 S.W.3d at 339. Specifically, nonresidents who reach beyond one state and create continuing relationships with residents of another state are subject to the specific jurisdiction of the latter in suits arising from those activities. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 575. We conclude Tin Star presented evidence that appellants established a continuing relationship with Tin Star and Texas and are subject to specific jurisdiction over claims arising out of that relationship.

Tin Star's suit arises out of and relates to an ongoing business relationship with appellants that was created by the LLC Agreement. Specifically, Tin Star asserts appellants first fraudulently induced it to enter into that Agreement and then breached both that Agreement and a confidentiality and non-circumvention agreement that preceded it. The confidentiality and non-circumvention agreement was entered into so that Tin Star could share information with 360 Residential about the project while ensuring 360 Residential could not then use Tin Star's confidential information or pursue the project on its own. At that time, 360 Residential knew Tin Star was located in Texas and it expressly agreed that agreement would be governed in accordance with Texas law and that any claims related to or arising out of that agreement would be litigated in Texas. With that agreement in place, appellants then obtained information about the project, after which the parties agreed to enter into the LLC Agreement. According to Tin Star, it was fraudulently induced to do so. It is undisputed that the LLC Agreement did not also include a forum selection clause.[5] According to appellants, the choice of law and forum selection provisions did not survive the LLC Agreement. But in any event, the prior agreement was certainly connected to the relationship between the parties and their negotiation of the LLC

---

[5] Specifically, appellants assert the confidentiality and non-circumvention agreement was superseded by the LLC Agreement. We express no opinion on this issue.

–13–

Agreement and is properly considered in our analysis. *Cf. Burger King*, 471 U.S. at 482 (choice of law provisions do not establish jurisdiction but are properly considered in a minimum contact analysis).

Furthermore, although appellants assert the only purpose of the Company was to develop the Irvine property, the LLC Agreement specifically required the "Tin Star Group," which included Tin Star and its affiliates, to offer investment opportunities in Texas (and two other states) to the Company on the same terms offered to the Tin Star Group. After the Company was formed, appellants then authorized Tin Star to establish a Dallas office for the Company and to conduct the Company's day-to-day operations of the Company from that office.

We conclude the evidence shows appellants established a continuing relationship with both Tin Star and the State of Texas. We further conclude that, by doing so, they purposefully availed themselves of the privilege of conducting activities within the forum, thus invoking the benefits and protections of our laws. *See Retamco Operating*, 278 S.W.3d a 339-40 (Texas Supreme Court noting it had "no difficulty imagining just how [the nonresident] would benefit from the processes and protections of Texas law when nonresident established contacts creating a continuing relationship with the State of Texas); *see also Burger King Corp.*, 471 U.S. at 480 (franchisee established minimum contacts with Florida by entering into "a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida."). Because Tin Star's claims arose out of and related to the relationships appellants established with Tin Star and Texas, we conclude appellants' contacts are sufficient to support specific jurisdiction over those claims.

We must further determine whether an assertion of jurisdiction over appellants comports with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 574; *MasterGuard, L.P.,* 441 S.W.3d at 381. To defeat jurisdiction, appellants must present "a

compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In determining whether they made this showing, we consider (1) the burden on appellants being required to litigate in Texas, (2) Texas's interest in adjudicating the dispute, (3) Tin Star's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies. *Spir Star AG*, 310 S.W.3d at 878-79. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the defendant has purposefully established minimum contacts with the forum state. *Id*. at 878.

According to appellants, it would be "unfair and unreasonable" to require them to litigate in Texas because their representatives, Warshaw and Butler, both live in Georgia. They further assert other "potential" witnesses are located in California, and litigation in Texas would therefore increase litigation expenses. Finally, they assert Texas has "no interest" in litigating this dispute.

First, we cannot agree Texas has no interest in providing a forum to an entity whose primary place of business is in this state or in resolving a dispute between entities that have established a connection with this state. Further, Tin Star is located in Texas and it has an interest in obtaining convenient relief in this state. We also note that although appellants suggest California would be a more appropriate forum, none of the parties to this litigation are either residents of California or have places of business in that state. Finally, appellants have not identified any compelling interest either Georgia or California might have in adjudicating this dispute. We conclude appellants have failed to make a showing that the Texas court's exercise of jurisdiction over them would be unreasonable. Therefore, we resolve the first issue against

appellants.  Because of our disposition of this issue, we need not reach appellants' second issue in which they assert they did not consent to jurisdiction in Texas.

We affirm the trial court's order.

/Ada Brown/
ADA BROWN
JUSTICE

140412F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

360-IRVINE, LLC, ET AL., Appellants

No. 05-14-00412-CV         V.

TIN STAR DEVELOPMENT, LLC, ET AL., Appellees

On Appeal from the 101st Judicial District Court, Dallas County, Texas

Trial Court Cause No. DC-1-14255.

Opinion delivered by Justice Brown. Justices Bridges and Myers participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellees TIN STAR DEVELOPMENT, LLC, ET AL. recover their costs of this appeal from appellants 360-IRVINE, LLC, ET AL.

Judgment entered this 30th day of June, 2015.