**Opinion issued June 22, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00779-CV

———————————

## VERTELLUS HOLDINGS LLC, Appellant

## V.

## PHILIP JOHNSON, Appellee

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-23434**

---

## O P I N I O N

Appellant Vertellus Holdings LLC ("VH") appeals from the trial court's denial of its special appearance. In four issues, VH argues that: (1) appellee Philip Johnson failed to plead sufficient facts to demonstrate personal jurisdiction under the Texas long-arm statute; (2) it negated all grounds for assertion of specific or

general personal jurisdiction; (3) it was neither a citizen nor resident of Texas; and (4) the citizenship of a business entity for the purpose of federal diversity jurisdiction is irrelevant to a determination of personal jurisdiction in Texas.

We reverse the trial court's order denying the special appearance and render judgment dismissing Johnson's claims against VH.

## Background

Philip Johnson sued Vertellus Specialties for breach of contract. Johnson alleged that, in February 2013, he and Vertellus Specialties entered into a consulting agreement, which stated that he would receive a success fee when Vertellus Specialties acquired any company on the "Target List," including Bercen Inc. ("Bercen"). The agreement specified Johnson's address in Houston, Texas, where all notices to him would be sent, and Vertellus Specialties's address in Indianapolis, Indiana, where notices to the company would be sent. The agreement stated that it would be governed by Indiana law, and that venue was proper only in Marion County, Indiana. The agreement also stated that it would be "binding upon and . . . inure to the benefit of the parties . . . and their heirs, personal representatives, transferees, successors and assigns."

Throughout 2013, Johnson worked with John Andrews, who was the vice president of Vertellus Specialties, on the Bercen acquisition, but their efforts were unsuccessful at that time. In May 2016, Vertellus Specialties filed for Chapter 11

bankruptcy. Vertellus Specialties was one of several related entities at issue in the bankruptcy proceeding. As part of the resolution of the bankruptcy proceeding, Vertellus Specialties sold all its assets to prior term loan lenders, who had jointly formed Valencia Bidco LLC for that purpose. The bankruptcy court approved the asset purchase agreement in an order, which stated:

> Except for the Assumed Liabilities or as otherwise expressly set forth in . . . this Order, the Purchaser shall not have any liability for any obligation of the Debtors arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, and except for the Assumed Liabilities provided in the [asset purchase agreement], the Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates. By virtue of the Sale, to the extent allowed by applicable law and except as otherwise set forth in this Order, the Purchaser and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, *de facto* or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect for the Assumed Liabilities. To the extent allowed by applicable law and except as otherwise set forth in this Order, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including . . . successor or transferee liability . . . *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date . . . .

According to Johnson's pleading, Valencia Bidco LLC later became V Global Holdings LLC, which is now the corporate parent of Vertellus Holdings

3

("VH"). Johnson alleged that Richard Preziotti, who had been the president of Vertellus Specialties, and John Andrews worked for the new entity, and they continued working to acquire Bercen. Johnson further alleged that both Preziotti and Andrews left VH before 2020, but VH then engaged Andrews as a consultant for the purposes of the acquisition of Bercen. Johnson pleaded that when VH acquired Bercen in early 2020, VH paid Andrews a success fee. It paid nothing to Johnson in connection with the Bercen acquisition.

In April 2020, Johnson sued Vertellus Specialties in Texas. After difficulty serving Vertellus Specialties and verbal assertions that the trial court lacked jurisdiction, Johnson filed suit in federal district court in Indiana against VH and VSI Liquidating, Inc., which Johnson characterized as "f/k/a Vertellus Specialties, Inc."[1] In March 2022, Johnson nonsuited his federal claims because defense counsel had represented that a member of VH, a limited liability company, was a citizen of Texas for the purposes of federal diversity jurisdiction.

In May 2022, Johnson amended his petition in Texas court, pleading a claim for breach of contract against Vertellus Specialties and claims for unjust enrichment and quantum meruit against VH. VH filed a special appearance, arguing that the trial court lacked personal jurisdiction because VH is not a resident of Texas, was not a party to the consulting agreement, and did not have sufficient

---

[1] The record in this interlocutory appeal does not entirely clarify the relationships among, or the timing of formation of, the various Vertellus entities.

contacts with Texas for the long-arm statute to apply. It attached the following jurisdictional evidence to its special appearance: (1) Johnson's original complaint in the federal court case; (2) a copy of the federal district court's docket sheet in that case; (3) VH's response to interrogatories in the federal case; (4) VH's objections to a motion for extension of time and request for discovery in the federal case; (5) the order approving the asset purchase agreement from the bankruptcy court; (6) a sworn declaration from Anne Frye, secretary and general counsel for VH; and (7) a sworn declaration from VH's counsel authenticating the other documents attached to the special appearance. In her declaration, Frye stated:

> By virtue of my duties and responsibilities to Vertellus Holdings LLC, I am familiar with the place where Vertellus Holdings LLC was organized and when, which state's laws govern its internal affairs, where its principal place of business is, where its business operations are conducted, and whether it maintains a registered agent for service in Texas.

> Vertellus Holdings LLC was organized in Delaware on August 31, 2016. Its internal affairs are governed by the laws of Delaware. The principal place of business of Vertellus Holdings LLC is 201 North Illinois Street, Suite 1800, Indianapolis, Indiana 46204. Vertellus Holdings LLC has not sought and thus not received authorization to do business in the State of Texas because it does not do business in the State of Texas. Vertellus Holdings LLC does not have a registered agent for service in the State of Texas.

> Vertellus Holdings LLC is an entity separate and apart from Vertellus Specialties, Inc. Vertellus Holdings LLC has never had the name Vertellus Specialties, Inc. and has never merged or been consolidated with or acquired any ownership interest in Vertellus Specialties, Inc. Vertellus Specialties, Inc. has never merged or been

5

consolidated with or acquired any ownership interest in Vertellus Holdings LLC.

Vertellus Holdings LLC has never filed for bankruptcy.

In response, Johnson argued that VH admitted in federal court that it was a Texas citizen, and therefore it is also a Texas resident. He further alleged that he initially introduced Vertellus Specialties to Bercen, and but for that introduction, VH "would not have even known of Bercen, let alone had an opportunity to potentially acquire it." He alleged that because he lived in Texas, Preziotti and Andrews acquired information about "potential acquisitions in the anhydrides market" from him. He also argued that VH failed to compensate him in Texas; thus, the cause of action arose in Texas. Johnson did not attach any jurisdictional evidence to his response.

In reply, VH challenged the timeliness of Johnson's response and argued that citizenship for the purposes of diversity jurisdiction is not the same as residency for the purpose of personal jurisdiction, and that Vertellus Specialties's contacts with Texas could not be imputed to VH.

The trial court granted Johnson leave for the late-filed response and denied the special appearance "because the pleadings show[] Defendant is a citizen of the State of Texas–entities can be citizens of different states at the same time unlike natural persons. Texas courts have general jurisdiction over its citizens, both natural and legal persons such as Defendant."

VH appealed.

## Analysis

On appeal, VH presents four issues, each of which states a reason why the trial court erred by denying its special appearance. VH argues that: (1) Johnson failed to plead sufficient facts to demonstrate personal jurisdiction over VH; (2) VH negated all grounds for assertion of specific or general personal jurisdiction; (3) VH is not a citizen or a resident of Texas for the purpose of determining whether the court has personal jurisdiction over it; and (4) the citizenship of a business entity for the purpose of federal diversity jurisdiction is irrelevant to a determination of personal jurisdiction.

In the trial court and on appeal, Johnson argues that because VH argued that it was a citizen of Texas to oppose diversity jurisdiction in federal court, it is a citizen and therefore a resident of Texas for the purpose of personal jurisdiction. To support this conclusion, Johnson further argues that the long-arm statute does not include limited liability companies, like VH, in the list of examples of "nonresidents."

Because citizenship for the purpose of diversity jurisdiction does not confer personal jurisdiction in a Texas state court, and because Johnson did not plead or proffer jurisdictional evidence showing that VH had sufficient contacts with Texas

to establish specific or general personal jurisdiction, we will reverse the trial court's order and render judgment in favor of VH.

## I. Personal jurisdiction law and standards

### A. Standard of review

Whether a court has personal jurisdiction over a nonresident defendant is a question of law, and we therefore review de novo the trial court's ruling on a special appearance. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013) (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)).

### B. Personal jurisdiction over residents

A court must possess both subject-matter jurisdiction over a case and personal jurisdiction over a party to issue a binding judgment. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021). While subject-matter jurisdiction refers to the court's power to hear a particular type of suit, personal jurisdiction concerns the court's power to bind a particular person or party. *Id.* at 8. A court obtains personal jurisdiction over a defendant through valid service of process or through the defendant's appearance. *Tomlinson v. Khoury*, 624 S.W.3d 601, 606 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *see Velasco v. Ayala*, 312 S.W.3d 783, 798 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Personal jurisdiction is comprised of two elements: (1) the defendant must

8

be amenable to the jurisdiction of the court and (2) the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant."); *see also Cantu v. Gray & Becker, P.C.*, No. 03-02-00099-CV, 2002 WL 31599470, at *4 (Tex. App.—Austin Nov. 21, 2002, pet. denied) (mem. op., not designated for publication) ("Texas courts are courts of general jurisdiction and have personal jurisdiction over Texas residents and all other persons who are amenable to process issued by the courts of this state.").

### C. Personal jurisdiction over nonresidents and the Texas long-arm statute

Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal due-process guarantees. *Luciano*, 625 S.W.3d at 8. The Texas long-arm statute provides that "'nonresident' includes: (1) an individual who is not a resident of this state; and (2) a foreign corporation, joint-stock company, association, or partnership." TEX. CIV. PRAC. & REM. CODE § 17.041. Texas courts, including this one, have implicitly determined that the nonexclusive definition of nonresident also includes limited liability companies. *See Gramercy Advisor LLC v. R.K. Lowery*, No. 01-14-00904-CV, 2015 WL 3981610, at *15 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op.) (determining whether personal jurisdiction existed over defendant LLC under Texas long-arm statute); *Favour Leasing, LLC v. Mulligan*, No. 05-13-01000-CV,

2014 WL 4090130, at *9 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (same);

*MasterGuard L.P. v. Eco Techs. Int'l LLC*, 441 S.W.3d 367, 382 (Tex. App.—

Dallas Aug. 22, 2013, no pet.) (same).

The Texas long-arm statute "broadly permits jurisdiction over a nonresident doing 'business in this state,'" if the nonresident also satisfies one of the three statutory requirements, and it establishes alternative methods of effectuating service of process on nonresidents. *Luciano*, 625 S.W.3d at 8 (quoting TEX. CIV. PRAC. & REM. CODE § 17.042); *see generally*, TEX. CIV. PRAC. & REM. CODE §§ 17.01–.093. Section 17.042 provides that

> a nonresident does business in this state if the nonresident:
>
> (1)  contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2)  commits a tort in whole or in part in this state; or
>
> (3)  recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042.

**D.    Due process considerations in the exercise of personal jurisdiction**

Consistent with federal due-process protections, a state court may assert personal jurisdiction over a nonresident defendant only if the defendant has established "minimum contacts" with the forum state such that maintenance of the

suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see Luciano*, 625 S.W.3d at 8.

### 1. General and specific personal jurisdiction

A defendant's contacts with the forum can give rise to either general or specific jurisdiction. *Luciano*, 625 S.W.3d at 8. A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* (citations omitted). By contrast, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). "The minimum contacts necessary for specific jurisdiction are established if the defendant purposefully avails itself of the privilege of conducting activities in the forum state . . . and the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Luciano*, 625 S.W.3d at 8–9 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262–64 (2017)).

### 2. Purposeful availment through minimum contacts

The "touchstone of jurisdictional due process [is] 'purposeful availment.'" *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) (alteration in original) (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005)). In *Michiana*, the Texas Supreme Court articulated three important aspects

of the purposeful availment inquiry. 168 S.W.3d at 785. First, only the nonresident defendant's contacts with the forum count. *Id.* This ensures that the nonresident defendant is not haled into a jurisdiction solely by the unilateral activities of a third party. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the acts relied on must be purposeful; the nonresident defendant may not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous." *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Third, the nonresident defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" because "[j]urisdiction is premised on notions of implied consent" and by "invoking the benefits and protections of a forum's laws, . . . [the] nonresident consents to suit there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

With respect to a business organization, the "paradigm" forums for the exercise of general jurisdiction are the place of organization and principal place of business. *Ford Motor Co.*, 141 S. Ct. at 1024; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler AG*, 571 U.S. at 137. Such bases afford a plaintiff "recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

### 3. Fair play and substantial justice

"Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). The burden is on the nonresident defendants to present a compelling case that despite the existence of minimum contacts, the presence of some other considerations renders the exercise of jurisdiction unreasonable. *Id.* at 231. In making this determination, a court generally must look to the following factors: (1) the burden on the nonresident defendants; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *Id.* at 228, 231. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendants have purposefully established minimum contacts with the forum state. *Id.* at 231.

13

### E. The burden shifting procedure for establishing or challenging personal jurisdiction

Initially, the plaintiff bears the burden to plead factual allegations that demonstrate the court has personal jurisdiction over the defendant either as a resident of Texas or, if a nonresident, under Texas's long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). A nonresident defendant can challenge personal jurisdiction by filing a special appearance in which it negates all bases of personal jurisdiction alleged by the plaintiff. *Id.* If the plaintiff fails to plead jurisdictional facts alleging personal jurisdiction, the defendant may defeat personal jurisdiction with evidence showing that it is not a Texas resident. *Id.* at 659. When the pleading is wholly devoid of jurisdictional facts establishing personal jurisdiction over a nonresident defendant, the plaintiff should amend the pleading in response to the special appearance. *See id.*

The defendant may also challenge personal jurisdiction by presenting evidence that disproves the plaintiff's jurisdictional allegations. *Id.* For example, the defendant may show that it has had no contacts with Texas. *Id.* Alternatively, the defendant may argue that even if the plaintiff's allegations are true, the court does not have personal jurisdiction because the evidence is legally insufficient to show purposeful availment, the claims do not arise from the contacts if specific jurisdiction is alleged, or the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

**II.**  **The trial court does not have personal jurisdiction over VH.**

**A.**  **Citizenship for the purpose of federal diversity jurisdiction is different from and not relevant to residency for the purpose of personal jurisdiction.**

As a preliminary matter, we address the argument that it is unnecessary to consider the applicability of the Texas long-arm statute because VH is a Texas resident by virtue of its judicial admission in federal court that it is a Texas citizen. The Fourteenth Court of Appeals addressed a similar issue in *Momentum Engineering, LLC v. Tabler*, No. 14-18-00002-CV, 2018 WL 4037411, at *3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2018, pet. denied) (mem. op.). In *Momentum Engineering*, the plaintiff argued that the trial court had jurisdiction over the foreign defendant because it was "a limited liability company with a member who resides in Houston." *Id.* The plaintiff relied on *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016), which held that for the purpose of federal diversity jurisdiction, an unincorporated association is a citizen in every place in which a member is a citizen. *See Momentum Eng'g*, 2018 WL 4037411, at *3. The Fourteenth Court of Appeals stated: "The question of whether a federal court has diversity jurisdiction over a given case is a distinct inquiry from whether a court has personal jurisdiction over a defendant." *Id.* The court explained:

> The requirements of federal diversity jurisdiction flow from Article III of the Constitution. *See* U.S. CONST. art. III, § 2, cl. 1; *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Such restrictions on a federal court's subject-matter

15

jurisdiction are the result of the limited nature of the federal judiciary's powers. *See Ins. Corp. of Ir.*, 456 U.S. at 702. The requirements applicable to personal jurisdiction, on the other hand, flow from the Due Process Clause and protect individual liberty interests. *Id.* Thus, a federal court can have diversity jurisdiction over a case and yet lack personal jurisdiction over the foreign defendant. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985) (analyzing personal jurisdiction despite the existence of diversity jurisdiction); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 487 (5th Cir. 2018) (federal district court with diversity jurisdiction over the case had personal jurisdiction over only one of plaintiff's two claims).

*Momentum Eng'g*, 2018 WL 4037411, at \*4.

The court of appeals concluded that there is no legal authority that states that "a limited liability company is subject to general personal jurisdiction in every state in which a member is a citizen." *Id.* "The rule instead is that limited liability companies are treated as partnerships for the purpose of federal diversity jurisdiction, but they are treated as corporations for the purpose of general personal jurisdiction." *Id.*

We agree with the Fourteenth Court of Appeals, and we conclude that VH's arguments in federal court about federal diversity jurisdiction play no role in our analysis of personal jurisdiction.

### B. Personal jurisdiction is not supported by the pleadings or the jurisdictional evidence.

We now consider whether the trial court had personal jurisdiction over VH based on the Texas long-arm statute and federal due process requirements.

16

Johnson's live pleading is his first amended petition. In this pleading, he alleged: "Defendant Vertellus Holdings LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Marion County, Indiana." Johnson alleged that "a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas." Most of Johnson's allegations describe his consulting contract and work for Vertellus Specialties. Johnson also stated that after Vertellus Specialties filed for bankruptcy, its assets were sold to Valencia Bidco LLC, which is now V Global Holdings LLC, the corporate parent for VH. He further alleged that Preziotti and Andrews, who were the president and vice president of Vertellus Specialties, then began working in the same or similar positions for VH. According to Johnson, VH later acquired Bercen. Johnson maintains that but for his consulting work with Vertellus Specialties, VH would not have been able to acquire Bercen.

First, Johnson's allegations demonstrate that VH is a nonresident. Johnson has argued that VH does not fit the statutory definition of a nonresident in the long-arm statute because it is a limited liability company and not a corporation. *See* TEX. CIV. PRAC. & REM. CODE § 17.041 (defining "nonresident" by a nonexclusive list that includes other business organizations but does not expressly mention LLCs). Johnson argues that this is a matter of first impression because no Texas court has expressly held that the long-arm statute applies to LLCs. We have noted, however,

17

that this Court (and others) have applied the long-arm statute to LLCs. *See, e.g.*, *Gramercy Advisor LLC*, 2015 WL 3981610, at \*15 (holding that nonresident defendant LLC had sufficient minimum contacts with Texas to justify personal jurisdiction, when such jurisdiction did not offend traditional notions of fair play and substantial justice); *Favour Leasing, LLC*, 2014 WL 4090130, at \*9 (holding that court lacked personal jurisdiction over LLC because plaintiff did not show substantial connection to state of Texas); *MasterGuard L.P.*, 441 S.W.3d at 382 (holding that court had personal jurisdiction over nonresident LLC under Texas long-arm statute).

Second, Johnson affirmatively pleaded that VH's "paradigm forums" for the exercise of general jurisdiction were Indiana and Delaware. *Ford Motor Co.*, 141 S. Ct. at 1024 (holding that paradigm forums are place of organization and principal place of business).

Third, Johnson has not pleaded any factual allegations connecting VH—as an entity distinct from Vertellus Specialties—to Texas. He did not allege that VH did business in Texas, contracted with him, or had any connection to Texas at all. Instead, he relies on Vertellus Specialties's contact with Texas, which is limited to entering into a consulting agreement with a Texas resident. Johnson's argument imputes Vertellus Specialties's contacts with Texas to VH on the grounds that

Preziotti and Andrews worked for Valencia Bidco or a related entity after the bankruptcy sale. Johnson alleged:

> Vertellus [Valencia Bidco] announced that, despite the sale, "The Company will be led by the existing leadership team and continue to execute against its current strategic plan with a relentless focus on safety, quality, efficiency and growth." . . . Crucially, that included both Preziotti and Andrews continuing in the same positions as prior to the bankruptcy. . . . In other words, Vertellus Specialties continued with business as usual.

After Vertellus Specialties filed for bankruptcy, it sold its assets and transferred certain debts and contracts to Valencia Bidco. Although Vertellus Specialties transferred two other consulting agreements, it did not transfer the consulting agreement with Johnson. The sale (asset purchase agreement) was authorized by order of the bankruptcy court. The order stated that it was "binding in all respects upon . . . all holders of any Claim(s) (as defined in the Bankruptcy Code) against any Debtor, whether known or unknown . . . ." The order also stated that except for the liabilities that were expressly assumed as part of the transaction, the purchaser, Valencia Bidco, "shall not have any liability for any obligation of the Debtors arising under or related to any of the Purchased Assets." The order further stated:

> By virtue of the Sale, to the extent allowed by applicable law and except as otherwise set forth in this Order, the Purchaser and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, de facto or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, of

19

any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity . . . .

The Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5). Johnson's contract with Vertellus Specialties gave him the right to payment upon the occurrence of a contingency—the acquisition of a company on the target list. To the extent that this is a claim under the Bankruptcy Code, the bankruptcy court's order is binding on Johnson. And the bankruptcy court's order specifically states that the purchaser is not a continuation of the debtor's business. Johnson has not explained any legal reason why the contacts of Vertellus Specialties should be imputed to VH. We conclude that they should not be.

Fourth, VH produced jurisdictional evidence that proves it had no contacts with Texas. In her declaration, Anne Frye, secretary and general counsel to VH, stated that: (1) VH was organized in Delaware; (2) its internal affairs are governed by Delaware law; (3) its principal place of business is in Indiana; (4) it has not sought or received authorization to do business in Texas; (5) it does not do business in Texas; (6) it does not have a registered agent for service of process in Texas; (7) it is an entity separate and apart from Vertellus Specialties; (8) it has

never used the name Vertellus Specialties; (9) it has never merged with, consolidated with, or acquired ownership interest in Vertellus Specialties, and Vertellus Specialties has never merged with, consolidated with, or acquired ownership interest in VH; and (10) VH has never filed for bankruptcy.

Considering the pleadings and the jurisdictional evidence, we hold that the trial court did not have personal jurisdiction over VH because such exercise of jurisdiction neither satisfies the long-arm statute nor comports with federal due process guarantees. In light of this conclusion, we do not need to consider whether the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. We sustain VH's issues on appeal.

## Conclusion

We reverse the trial court's order, and we render judgment dismissing Johnson's claims against VH.

Peter Kelly
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.